E. MARTIN ESTRADA
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
DENNIS MITCHELL (Cal. Bar No. 116039)
ERIK M. SILBER (Cal. Bar No. 190534)
Assistant United States Attorneys
Environmental and Community Safety Crimes Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-8644/3819
    Facsimile: (213) 894-0141
    E-mail:    dennis.mitchell@usdoj.gov
               erik.silber@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 15-361(A)-JGB |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT STARLITE RECLAMATION ENVIRONMENTAL SERVICES, INC. |
| v. | |
| STARLITE RECLAMATION ENVIRONMENTAL SERVICES, INC., | |
| Defendant. | |

1.    This constitutes the binding plea agreement between

defendant STARLITE RECLAMATION ENVIRONMENTAL SERVICES, INC.

("defendant") and the United States Attorney's Office for the Central

District of California (the "USAO") in the above-captioned case.

This agreement is limited to the USAO and cannot bind any other

federal, state, local, or foreign prosecuting, enforcement,

administrative, or regulatory authorities.

//

//

1                            RULE 11(c)(1)(C) AGREEMENT

2        2.   Defendant understands that this agreement is entered into

3   pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).

4   Accordingly, defendant understands that, if the Court determines that

5   it will not accept this agreement, absent a breach of this agreement

6   by defendant prior to that determination and whether or not defendant

7   elects to withdraw any guilty plea entered pursuant to this

8   agreement, this agreement will, with the exception of paragraph 20

9   below, be rendered null and void and both defendant and the USAO will

10  be relieved of its obligations under this agreement.  Defendant

11  agrees, however, that if defendant breaches this agreement prior to

12  the Court's determination whether or not to accept this agreement,

13  the breach provisions of this agreement, paragraphs 22 and 23 below,

14  will control, with the result that defendant will not be able to

15  withdraw any guilty plea entered pursuant to this agreement, the USAO

16  will be relieved of all of its obligations under this agreement, and

17  the Court's failure to follow any recommendation or request regarding

18  sentence set forth in this agreement will not provide a basis for

19  defendant to withdraw defendant's guilty pleas.

20                          DEFENDANT'S OBLIGATIONS

21       3.   Defendant agrees to:

22            a.   At the earliest opportunity requested by the USAO and

23  provided by the Court, appear and plead guilty to counts seven and

24  eight of the first superseding indictment in United States v.

25  Starlite Reclamation Environmental Services, Inc. CR No. 15-368(A)-

26  JGB, which charges defendant with knowing discharge of a water

27  pollutant, in violation of §§ 1317(d), 1319(c)(2)(A).

28            b.   Not contest facts agreed to in this agreement.

c.    Abide by all agreements regarding sentencing contained in this agreement and affirmatively recommend to the Court that it impose sentence in accordance with paragraph 15 of this agreement.

d.    Appear for all court appearances, and obey any other ongoing court order in this matter.

e.    Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.    Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.    Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

h.    Pay the criminal fine that the Court imposes consistent with the terms of paragraph 15.b of this agreement.

<u>THE USAO'S OBLIGATIONS</u>

4.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement and affirmatively recommend to the Court that it impose a sentence in accordance with paragraph 15 of this agreement.

c.    Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violations arising out of defendant's conduct described in the agreed-to factual basis set forth below.  Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct

1    or any unlawful conduct that occurs after the date of this agreement.

2    Defendant agrees that at the time of sentencing the Court may

3    consider the uncharged conduct in determining the applicable

4    Sentencing Guidelines range, the propriety and extent of any

5    departure from that range, and the sentence to be imposed after

6    consideration of the Sentencing Guidelines and all other relevant

7    factors under 18 U.S.C. § 3553(a).

8                          COMPANY AUTHORIZATION

9         5.   Defendant represents that it is authorized to enter into

10   this agreement.  On or before the change of plea hearing pursuant to

11   this agreement, defendant shall provide the USAO and the Court with a

12   notarized legal document certifying that defendant is authorized to

13   enter into and comply with all of the provisions of this agreement.

14   Such resolution shall designate the company representative who is

15   authorized to take the actions specified in this agreement, including

16   pleading guilty on behalf of the company, and shall also state that

17   all legal formalities for such authorizations have been observed.

18              ORGANIZATIONAL CHANGES AND APPLICABILITY

19        6.   This agreement shall bind defendant, its successor

20   corporation(s), if any, and any other person or entity that assumes

21   the liabilities contained herein ("successor-in-interest").  No

22   change in name, change in corporate or individual control, business

23   reorganization, change in ownership, merger, change of legal status,

24   sale or purchase of assets, or similar action shall alter defendant's

25   responsibilities under this agreement.  Defendant shall not engage in

26   any action to seek to avoid the obligations and conditions set forth

27   in this agreement.

28

1

<u>NATURE OF THE OFFENSE</u>

2   　　7.　Defendant understands that for defendant to be guilty of

3   the crime charged in counts seven and eight of the First Superseding

4   Indictment, that is, knowing discharge of a water pollutant in

5   violation of Title 33, United States Code, Sections 1317(d),

6   1319(c)(2)(A), the following must be true: (1) on or about the date

7   charged in counts seven and eight, defendant, who was the owner or

8   operator of a source, knowingly operated the source, or knowingly

9   caused the source to be operated, in such a manner as to discharge a

10  pollutant; (2) the pollutant was discharged into a publicly-owned

11  treatment works; (3) the discharge violated a pretreatment standard

12  after the effective date of that standard.

13  　　　　　　　　　　<u>PENALTIES AND RESTITUTION</u>

14  　　8.　Defendant understands that the statutory maximum sentence

15  that the Court can impose for a violation of Title 33, United States

16  Code, Sections 1321(b)(3), 1319(c)(1)(A), is: 5 years of probation;

17  fine of $50,000 per day of violation, a fine of $500,000, or twice

18  the gross gain or gross loss resulting from the offense, whichever is

19  greatest; and a mandatory special assessment of $400.

20  　　9.　Defendant understands, therefore, that the total maximum

21  sentence for all offenses to which defendant is pleading guilty is:

22  five years probation; a fine of $100,000 per day of violation, a fine

23  of $1,000,000, or twice the gross gain or gross loss resulting from

24  the offenses, whichever is greatest; and a mandatory special

25  assessment of $800.

26  　　　　　　　　<u>SUSPENSION/REVOCATION/DEBARMENT</u>

27  　　10.　Defendant understands that if defendant holds any

28  regulatory license or permit, the conviction in this case may result

5

in the suspension or revocation of such license and/or permit.  By this agreement, the USAO makes no representation or promise concerning suspension or debarment of defendant from contracting with the United States or with any office, agency, or department thereof. Suspension and debarment of organizations convicted under various federal environmental protection and/or criminal statutes is a discretionary administrative action solely within the authority of the federal contracting agencies.

11.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

## FACTUAL BASIS

12.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning in or about 2013 and continuing through June 2015, defendant, a corporation located in Fontana, California, knowingly engaged in the treatment of wastewater received from other businesses.  As a wastewater treatment facility, defendant was hired to receive and treat other companies' wastewater so that the pH level and chemical composition were acceptable for discharge into a publicly owned treatment works ("POTW").

In 2013, defendant obtained a permit (the "permit") to discharge treated wastewater so long as the pH of the wastewater effluent was within certain pH limits and so long as co-defendant Starlite monitored and tested its wastewater to make sure that it was in compliance with its discharge limits.

Throughout the time period described herein, defendant was legally obligated to comply with the terms of its operating permit and with the national pre-treatment standard then in effect.  The national pretreatment standard in effect at that time prohibited a source, such as defendant, from, among other things, discharging wastewater with a pH level of less than five into a POTW.

Beginning on an unknown date no later than October 14, 2014 and continuing through and including June 4, 2015, employees of defendant, acting within the course and scope of their employment and with the intent to enable defendant to accept or not reject orders from customers to treat wastewater, knowingly: (1) failed to treat or to sufficiently treat wastewater received from defendant's customers; and (2) knowingly discharged the untreated or insufficiently treated wastewater into a drain that flowed to a POTW operated and maintained by the Inland Empire Utilities Agency ("IEUA") and to another POTW operated and maintained by the County Sanitation Districts of Los Angeles County (the "Inland/LA POTW").

In May 2014, the IEUA, after conducting an inspection of defendant's facility, issued a Notice of Violation to defendant.  The IEUA cited defendant for not having its pH monitoring system connected and for discharging wastewater with a pH of 5.5.

During May 2014, defendant's chief executive officer and a vice-president of defendant attended a compliance meeting with IEUA

representatives.  During that meeting, IEUA representatives told these representatives of defendant, among other things, that defendant must annotate its pH readings and calibrations on its pH chart recorder paper.  The IEUA also recommended that defendant purchase an extra pH probe for its final effluent pH monitoring system.

Subsequently, on or about September 11, 2014, the IEUA conducted another inspection at defendant's facility.  A sample of purportedly treated wastewater taken during this inspection was found to have a pH level of 3.6.  The IEUA inspector also found that defendant's pH meter was not accurately measuring the pH of its treated wastewater. Consequently, the IEUA issued another notice of violation, citing defendant for the low pH sample and its failure to calibrate its pH meter when required.

On or about October 14, 2014, the IEUA conducted another inspection at defendant's facility.  This time, a sample of purportedly treated wastewater revealed a pH level of 4.58.  Despite that low pH level, defendant's pH probe for its treated wastewater indicated a pH level of 11.  After placing defendant's pH probe into the sample box (where wastewater effluent would be tested for pH level) the inspector found that the pH probe was providing erratic readings.  In addition, the inspector found that approximately four hours of strip chart data, which would document pH levels of wastewater effluent, was missing.  Consequently, on October 23, 2014, the IEUA issued another notice of violation to defendant, citing, among other things, defendant's failure to properly maintain and operate its pre-treatment equipment and its discharge of wastewater in violation of its pH limit.

On or about November 6, 2014, representatives of defendant, including the aforementioned vice-president, and two other employees of defendant, attended another compliance meeting with the IEUA. During this meeting, the IEUA explained that all of defendant's pretreatment equipment had to be operational at all times when co-defendant discharged wastewater.  In addition, the IEUA warned that untreated wastewater should never be discharged.

After the compliance meeting, employees of defendant continued to knowingly and intentionally discharge untreated and/or insufficiently treated wastewater into a POTW, and each of these discharges were below the pH limit set forth in defendant's permit and the national pretreatment standard.  Specifically, more than 75 samples of wastewater discharged by defendant during the period from on or about November 25, 2014, through on or about June 4, 2015, indicated pH levels well below those limits, including the following discharges: March 6, 2015 (pH level below 3.00) and March 7, 2015 (pH level below 3.0).

In addition, on various occasions during this time period, in order to avoid detection of defendant's failure to sufficient treat its customer's wastewater, one or more of defendant's employees acting under the direction of the aforementioned vice-president of defendant, would tamper with monitoring devices that were intended to measure the pH of treated wastewater just prior to its discharge int the aforementioned POTW.  Such tampering included: (1) removing a pH probe from the sample box and placing it in a bucket of water so that the pH probe would measure the pH of water instead of treated or insufficiently treated wastewater; and (2) spraying water into the sample box so that an ISCO sampling device installed in the sample

box would measure the pH of water instead of the pH of untreated or insufficiently treated wastewater.

SENTENCING FACTORS AND AGREED-UPON SENTENCE

13.  Defendant and the USAO agree and stipulate that, pursuant to United States Sentencing Guidelines ("U.S.S.G.") §§ 8C2.1 and 8C2.10, the sentencing guidelines are not applicable in determining the fine for an organization violating 33 U.S.C. §§ 1321(b)(3), 1319(c)(1)(A), but all other sections of Chapter 8 of the U.S.S.G. are applicable in this case, including the provisions regarding probation.  Defendant understands that in determining defendant's sentence, the Court is also required to consider the factors set forth in Title 18, United States Code, Sections 3553(a) and 3572, including the kinds of sentences and sentencing ranges established under the Sentencing Guidelines.

14.  Pursuant to Chapter 8 of the Sentencing Guidelines and the factors set forth in Title 18, United States Code, Sections 3553(a) and 3572, including the nature and circumstances of the offense and the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant, the parties agree to advocate and affirmatively recommend that the Court sentence defendant as follows:

a.  <u>Probation</u>:  Defendant should be sentenced to probation for a term of three years with conditions to be fixed by the Court.

b.  <u>Criminal Fine</u>:  Defendant should pay a total criminal fine of $100,000, payable as follows: The sum of $50,000 shall be

made within two weeks of the date that the Court enters judgment in this matter.  The sum of $20,000 shall be paid within one year of the date that the Court enters judgment in this matter.  The sum of $15,000 shall be paid within two years of the date that the Court enters judgment in this case, and the remaining sum of $15,000 shall be paid within three years of the date that the Court enters judgment in this matter.  Defendant's criminal fine shall be paid by certified checks or wire transfers to the Clerk of the United States District Court for the Central District of California.  Confirmation of the completed payments shall be provided to the USAO.

c.  Special Assessment:  Defendant shall pay a total special assessment of $800.

WAIVER OF CONSTITUTIONAL RIGHTS

15.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.  The right to persist in a plea of not guilty.

b.  The right to a speedy and public trial by jury.

c.  The right to be represented by counsel at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel at every other stage of the proceeding.

d.  The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.  The right to confront and cross-examine witnesses against defendant.

f.  The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

11

g.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

### WAIVER OF APPEAL OF CONVICTION

16.  Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's conviction on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

### LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

17.  Defendant agrees that, provided the Court imposes the sentence specified in paragraph 15 above, defendant gives up the right to appeal any portion of that sentence, and the procedures and calculations used to determine and impose any portion of that sentence.

18.  The USAO agrees that, provided the Court imposes the sentence specified in paragraph 15 above, the USAO gives up its right to appeal any portion of that sentence, and the procedures and calculations used to determine and impose any portion of that sentence.

### RESULT OF WITHDRAWAL OF GUILTY PLEA

19.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a

claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge or any civil, administrative, or regulatory action that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>EFFECTIVE DATE OF AGREEMENT</u>

20.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

21.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously

13

1  entered guilty pleas pursuant to this agreement, defendant will not

2  be able to withdraw the guilty pleas, (b) the USAO will be relieved

3  of all its obligations under this agreement.

4     22.  Following the Court's finding of a knowing breach of this

5  agreement by defendant, should the USAO choose to pursue any charge

6  or any civil, administrative, or regulatory action that was either

7  dismissed or not filed as a result of this agreement, then:

8        a.  Defendant agrees that any applicable statute of

9  limitations is tolled between the date of defendant's signing of this

10 agreement and the filing commencing any such action.

11       b.  Defendant waives and gives up all defenses based on

12 the statute of limitations, any claim of pre-indictment delay, or any

13 speedy trial claim with respect to any such action, except to the

14 extent that such defenses existed as of the date of defendant's

15 signing this agreement.

16       c.  Defendant agrees that: (i) any statements made by

17 defendant, under oath, at the guilty plea hearing (if such a hearing

18 occurred prior to the breach); (ii) the agreed to factual basis

19 statement in this agreement; and (iii) any evidence derived from such

20 statements, shall be admissible against defendant in any such action

21 against defendant, and defendant waives and gives up any claim under

22 the United States Constitution, any statute, Rule 410 of the Federal

23 Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal

24 Procedure, or any other federal rule, that the statements or any

25 evidence derived from the statements should be suppressed or are

26 inadmissible.

27

28

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

23.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts, sentencing factors, or sentencing.  Defendant understands that the Court will determine the facts, sentencing factors, and other considerations relevant to sentencing and will decide for itself whether to accept and agree to be bound by this agreement.

24.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the sentence referenced in paragraph 15 is consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

1

<u>NO ADDITIONAL AGREEMENTS</u>

2       25.  Defendant understands that, except as set forth herein,

3   there are no promises, understandings, or agreements between the USAO

4   and defendant or defendant's attorney, and that no additional

5   promise, understanding, or agreement may be entered into unless in a

6   writing signed by all parties or on the record in court.

7          <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

8       26.  The parties agree that this agreement will be considered

9   part of the record of defendant's guilty plea hearing as if the

10  entire agreement had been read into the record of the proceeding.

11  AGREED AND ACCEPTED

12  UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
13  CALIFORNIA

14  E. MARTIN ESTRADA
    United States Attorney

15

16                                             1 - 3 - 23

17  DENNIS MITCHELL                          Date
    ERIK M. SILBER

18  Assistant United States Attorneys

19

20                                        12/22/22

21  Authorized Representative of         Date
    Defendant STARLITE RECLAMATION
22  ENVIRONMENTAL SERVICES, INC.

23

24                                        12/21/2022

25  DAVID WIECHERT                            Date
    Attorney for Defendant STARLITE
26  RECLAMATION ENVIRONMENTAL
    SERVICES, INC.
27

28

                               16

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with defendant's attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms.  I have discussed the evidence with defendant's attorney, and defendant's attorney has advised me of defendant's rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me or defendant other than those contained in this agreement.  No one has threatened or forced me or defendant in any way to enter into this agreement.  I am satisfied with the representation of defendant's attorney in this matter, and defendant is pleading guilty because defendant is guilty of the charges and wishes to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          ___12/22/22_____
                                                Date

Authorized Representative of
Defendant STARLITE RECLAMATION
ENVIRONMENTAL SERVICES, INC.


## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am defendant's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I

17

1  have fully advised my client of its rights, of possible pretrial

2  motions that might be filed, of possible defenses that might be

3  asserted either prior to or at trial, of the sentencing factors set

4  forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

5  provisions, and of the consequences of entering into this agreement.

6  To my knowledge: no promises, inducements, or representations of any

7  kind have been made to my client other than those contained in this

8  agreement; no one has threatened or forced my client in any way to

9  enter into this agreement; my client's decision to enter into this

10  agreement is an informed and voluntary one; and the factual basis set

11  forth in this agreement is sufficient to support my client's entry of

12  guilty pleas pursuant to this agreement.

13

14  _____          12/21/22
    DAVID WIECHERT                             _____
    Attorney for Defendant STARLITE            Date
15  RECLAMATION ENVIRONMENTAL
    SERVICES, INC.

16

17

18

19

20

21

22

23

24

25

26

27

28

18